<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ──────────────────────── | : | |
| ANTHONY DUDLEY, | : | **Hon. Stanley R. Chesler** |
| | : | |
| Petitioner, | : | Civil No. 07-5300 (SRC) |
| | : | |
| v. | : | |
| | : | |
| MICHELLE RICCI, et al., | : | **O P I N I O N** |
| | : | |
| Respondents. | : | |
| ──────────────────────── | : | |

**APPEARANCES**:

      ANTHONY DUDLEY, #472800/345478B
      New Jersey State Prison
      P.O. Box 861
      Trenton, New Jersey  08625
      Petitioner <u>Pro Se</u>

      SUSAN B. GYSS, Assistant Prosecutor
      EDWARD J. DE FAZIO, HUDSON COUNTY PROSECUTOR
      595 Newark Avenue
      Jersey City, New Jersey 07306
      Attorneys for Respondents

<u>**CHESLER**</u>, District Judge

Anthony Dudley filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging a judgment of conviction in the Superior Court of New Jersey, Hudson County, entered January 31, 2002, after a jury found him guilty of armed robbery, conspiracy to commit armed robbery, and weapons charges, in violation of N.J. STAT. ANN. §§ 2C:15-1, 2C:5-2, 2C:39 4a & 5b.  Respondents filed an Answer and a copy of the state court record.  Petitioner filed a Traverse.  For the reasons expressed below, this Court will dismiss the Petition with prejudice and decline to issue a certificate of appealability.

# I.  BACKGROUND

In April 2000, a Hudson County grand jury indicted Petitioner, his brother Johnny Dudley, Carrie Ann Kenny and Manuel R. Colon.  Following a trial (and after hearing the testimony of Manuel Colon, who was granted use immunity), a jury found Petitioner and his brother guilty of first-degree armed robbery, second-degree conspiracy to commit armed robbery, second-degree possession of a weapon for an unlawful purpose, and third-degree possession of a handgun without a permit.  See State v. Dudley, Docket No. A-3566-01T4 slip op., pp. 1-2 (N.J. Super., App. Div., June 3, 2003).  The Law Division granted the State's motion to sentence Petitioner as a persistent offender, see N.J. STAT. ANN. § 2C:44-3a, and on January 31, 2002, imposed an extended 50-year term of imprisonment, with a 22-year period of parole ineligibility pursuant to the Graves Act, see N.J. STAT. ANN. § 2C:43-6(c).  Id., p. 6.  Petitioner appealed.  On June 3, 2003, the Appellate Division of the Superior Court of New Jersey affirmed the conviction and sentence.  Id.  On October 2, 2003, the New Jersey Supreme Court denied certification.  See State v. Dudley, 178 N.J. 29 (2003) (table).

On February 10, 2004, Petitioner filed a pro se petition for post-conviction relief in the Law Division.  After conducting an evidentiary hearing, the Law Division entered an order denying post-conviction relief on March 9, 2005.  See State v. Dudley, Docket No. A-4033-04T4 slip op., p. 10 (N.J. Super., App. Div., Jan. 29, 2007).  Petitioner appealed.  On January 29, 2007, the Appellate Division affirmed the order denying post-conviction relief.  Id.  On June 21, 2007, the New Jersey Supreme Court denied certification.  See State v. Dudley, 192 N.J. 74 (2007) (table).

Petitioner executed the Petition which is now before this Court on October 30, 2007.  The

Clerk received it November 1, 2007.  This Court gave Petitioner an opportunity, pursuant to

Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), to withdraw the Petition and file one all-inclusive

Petition, which he declined.

The Petition raises four grounds:

> **Ground One**: TRIAL COUNSEL FAILURE TO REQUEST THE
> ACCOMPLICE TESTIMONY CHARGE FOR COLON
> CONSTITUTES INEFFECTIVENESS WHICH DENIED
> DEFENDANT A FAIR TRIAL AND DUE PROCESS OF LAW.
>
> Supporting FACTS: The court's charge was prejudicially defective
> because it failed to provide adequate guidance as to how the jury
> should assess the credibility of Manuel Colon in light of the
> immunity agreement and the plea agreement which the witness
> received.
>
> **Ground Two**:  TRIAL COUNSEL WAS INEFFECTIVE FOR
> HIS FAILURE TO RETAIN AN EXPERT TO ANALYZE AND
> TEST THE TANGIBLE EVIDENCE PROFFERED BY THE
> STATE AT DEFENDANTS TRIAL, DENYING DEFENDANT
> OF A FAIR TRIAL AND DUE PROCESS OF LAW.
>
> Supporting FACTS:  The shirt and towel evidence is pristine in
> the sense that it is believe[d] that no lab has briushe [sic] these
> items which if trial counsel would of had items tested it could of
> exonerated defendant as the perpetrator.
>
> **Ground Three**:  TRIAL COUNSELS FAILURE TO
> INVESTIGATE OR INTERVIEW AND THEREAFTER CALL
> EYEWITNESSES DENIED DEFENDANT OF A FAIR TRIAL
> AND DUE PROCESS OF LAW.
>
> Supporting FACTS: There were numerous witnesses mentioned in
> the police report that were inexplicably, not interviewed by trial
> counsel.
>
> **Ground Four**: PROSECUTORIAL MISCONDUCT
> THROUGHOUT THE PROCEEDINGS DENYING
> DEFENDANT A FAIR TRIAL AND DUE PROCESS OF LAW.

Supporting FACTS:

A.  The Prosecutor failed to disclose the true nature of the
expectations of co-defendant/witness Manuel Colon;

B.  The prosecutorial misconduct prevented trial counsel from
effective cross examination;

C.  Defendant's fundamental right to have the jury fairly evaluate
the evidence was severely prejudiced by comment[s] made in the
Prosecutor's summation.

(Pet. ¶ 12.A. to 12.D.)

On April 9, 2008, Respondents filed an Answer.  Petitioner filed a Traverse on July 15,

2008.  In the Traverse, Petitioner provides additional facts regarding Ground Four:

The prosecutor misstated the facts in closing argument when she
told the jury that no deals were offered to Colon for his statement
and testimony.  Scala [argued to] the jury:

"Mr. Colon will be prosecuted at a later date.  We could not
get his testimony in this case unless he was granted
immunity; it just meant that anything he said there could
not be used against him.  You will recall that he said he
gave a statement at a prior time and testified consistently
with that statement.  The State has that statement against
him.  We have all the evidence we need against Manny
Colon.  Rest assured, he will be prosecuted.  We have lost
nothing by allowing him to testify with a grant of immunity
except that we will have to try him later."  (6T52-7 to 19).

Inferring that his testimony would do nothing to reduce his
exposure.  A statement the prosecutor knew was false, as a deal
had already been struck for a plea bargain not to exceed ten years.
In fact, it was secured beyond the reach of the judge as the
indictment was amended to conspiracy effectively taking it out of
the judges hands . . . .  It is beyond peradventure that Scala did not
give deals for testimony; rather, as in this case, she gave deals
through either tacit agreements, or off the record with the lawyers
she worked with . . .

(Traverse, pp. 11-12.)

4

## II.  STANDARD OF REVIEW

A habeas corpus petition must meet "heightened pleading requirements."  McFarland v. Scott, 512 U.S. 849, 856 (1994) (citing 28 U.S.C. § 2254 Rule 2(c)).  The petition must specify all the grounds for relief available to the petitioner, state the facts supporting each ground, and state the relief requested.  See 28 U.S.C. § 2254 Rule 2(c)(1), (c)(2), (c)(3).

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

A.  Standard of Review for Claims Adjudicated on Merits

The AEDPA limits a federal court's authority to grant habeas relief when a state court has adjudicated petitioner's federal claim on the merits.  See 28 U.S.C. § 2254(d).  "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground."  Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (citations and internal quotation marks omitted), reversed on other grounds sub nom. Rompilla v. Beard, 545 U.S. 374 (2005); see also Rolan v. Vaughn, 445 F. 3d 671, 678 (3d Cir. 2006) ("Here, because the PCRA appellate court found that Vargas was not willing to testify at the guilt phase of Rolan's trial, its decision to deny habeas relief on that basis constituted an adjudication on the merits").  A state court may render an adjudication on the merits of a federal claim by rejecting the claim without

5

any discussion whatsoever.  See Rompilla, 355 F.3d at 247.  On the other hand, "[i]f the petitioner's legal claims were presented but not addressed by the state courts, 28 U.S.C. § 2254(d) does not apply, and federal courts undertake a de novo review of the claim."  Rolan, 445 F. 3d at 678.

Where a federal claim was "adjudicated on the merits" in state court proceedings, the writ must be denied unless adjudication of the claim either involved an unreasonable application of clearly established federal law, or was based on unreasonable determination of the facts in light of the evidence before the state court.  See 28 U.S.C. § 2254(d).  Specifically, § 2254(d) provides:

> (d) An application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

(1) Section 2254(d)(1)

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court.  See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004).  Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  Williams v. Taylor, 529 U.S. 362, 412 (2000); see also Carey v. Musladin, 549 U.S. 70, __, 127 S. Ct. 649, 653 (2006) ("federal

habeas relief may be granted here if the California Court of Appeal's decision was contrary to or involved an unreasonable application of this Court's applicable holdings"). A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. For example, in Carey v. Musladin, the court reversed the granting of a writ, holding that where "[n]o holding of this Court required the California Court of Appeal to apply the test of Williams and Flynn to the spectators' conduct . . . , the state court's decision was not contrary to or an unreasonable application of clearly established federal law." Carey, 127 S. Ct. at 654.[1] In addition, whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable.[2] Id. at 409-10;

_____

[1] See also Wright v. Van Patten, 128 S. Ct. 743, 747 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [petitioner's] favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law") (citation and internal quotation marks omitted).

[2] "[D]ecisions of federal courts below the level of the United States Supreme Court may be helpful to [a court] in ascertaining the reasonableness of state courts' application of clearly

(continued...)

7

see also Thomas v. Varner, 428 F. 3d 491, 497 (3d Cir. 2005).  Thus, "[t]he federal *habeas* court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent."  Outten v. Kearney, 464 F. 3d 401, 414 (3d Cir. 2006) (citation and internal quotation marks omitted).

(2) Section 2254(d)(2)

Where a petitioner seeks habeas relief under § 2254(d)(2) on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA necessarily apply.  Under § 2254(d)(2), the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  Section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (a district court must "presume the [state] court's factual findings to be sound unless [petitioner] rebuts the 'presumption of correctness by clear and convincing evidence.'")  Thus, once a court concludes that there are state court findings of fact to which it must defer under § 2254(e)(1), a "District Court should [] review[] those findings to ascertain whether or not they were reasonable" under 28 U.S.C. § 2254(d)(2).  Rolan, 445 F. 3d at 681.  A state court factual determination is not unreasonable in light of the evidence presented in the state court under §

_____

[2](...continued)
established United States Supreme Court precedent, as well as helpful amplifications of that precedent."  Marshall v. Hendricks, 307 F.3d 36, 71 n.24 (3d Cir. 2002) (citations and internal quotation marks omitted).

2254(d)(2) where "[r]easonable minds reviewing the record might disagree" on the factual

finding.  Rice v. Collins, 546 U.S. 333, __, 126 S. Ct. 969, 976 (2006); but see Rolan, 445 F. 3d

at 681 (Pennsylvania court's finding that an exculpatory witness was not willing to testify on

behalf of Rolan was objectively unreasonable under § 2254(d)(2) "because it was not supported

by the record" before the Pennsylvania court).

### III.  DISCUSSION

A.  Ineffective Assistance of Counsel

In Grounds One, Two and Three, Petitioner contends that counsel was constitutionally

ineffective in failing to request an accomplice liability instruction regarding the testimony of co-

defendant Manuel Colon, failing to retain and present a DNA expert witness in regard to the shirt

and towel used to cover the faces of the perpetrators, and failing to investigate and interview

eyewitnesses listed in the police report.  In his Traverse, Petitioner provides additional supporting

facts.  As to Ground Two, Petitioner asserts: "Had DNA tests been conducted it may have very

well established inculpatory evidence against a third-party suspect, and established reasonable

doubt as to Dudley participation in the robbery."  (Traverse, p. 4.)

In 1984, the Supreme Court adopted a two-part test for evaluating claims of ineffective

assistance of counsel.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).  First, the

defendant must "show that counsel's representation fell below an objective standard of

reasonableness."  Id. at 687-88.  To meet this prong, a "convicted defendant making a claim of

ineffective assistance must identify the acts or omissions of counsel that are alleged not to have

been the result of reasonable professional judgment."  Id. at 690.  The court must then determine

whether, in light of all the circumstances at the time, the identified errors were so serious that

they were outside the wide range of professionally competent assistance. <u>Id</u>.  Second, the

petitioner must show prejudice, <u>i.e.</u>, there is a "reasonable probability that but for counsel's

unprofessional errors, the result of the proceeding would have been different." <u>Id</u>. at 694.  As the

<u>Strickland</u> Court explained, "[a]ttorney errors come in an infinite variety and are as likely to be

utterly harmless in a particular case as they are to be prejudicial." <u>Id</u>. at 693.  The Supreme Court

further instructed that a district court need not address both components of an ineffective

assistance claim "if the defendant makes an insufficient showing on one." <u>Strickland</u>, 466 U.S.

at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient

prejudice, which we expect will often be so, that course should be followed." <u>Id</u>.

Petitioner presented his ineffective assistance of counsel claims in his petition for post-

conviction relief.  The Appellate Division rejected the accomplice liability instruction claim in

Ground One of the Petition as follows:

> Trial counsel's allegedly deficient performance in failing to request
> the accomplice testimony jury charge must be analyzed in light of
> the totality of the evidence before the jury.  In this case, we note
> that during his closing remarks to the jury, defendant's trial
> attorney argued, in no uncertain terms, that Manuel Colon was not
> a credible witness . . . .
>
> In addition, as part of the witness immunity charge, the jury was
> instructed by the court that Manuel Colon's testimony "should be
> given careful scrutiny . . ."
>
>        *             *            *
>
> The testimony of an accomplice witness should be closely
> scrutinized by a jury because accomplices tainted as they are with
> confessed criminality, are often influenced in their testimony by the
> strong motive of hope of favor or pardon from prosecution.
> Nevertheless, as indicated by the PCR judge, the accomplice
> witness jury instruction is a double-edged sword and it can cause a
> defendant more harm than good.  The accomplice witness charge

10

may prejudice a defendant because the jury is told that it may
convict the defendant based solely upon the testimony of an
accomplice, provided, of course, that the jury is satisfied beyond a
reasonable doubt of the defendant's guilt . . . .

           *                   *                   *

The PCR judge found that "there was a solid reason for not asking
for the accomplice charge," and he concluded that defendant had
failed to demonstrate that his attorney was deficient for not
requesting the charge. We agree. See State v. Begyn, 34 N.J. 35,
56 (1961) (noting that "after weighing the possible benefits against
the potential harm, a defendant might wisely refrain from
requesting the [accomplice witness] charge").

State v. Dudley, Docket No. A-4033-04T4 slip op. pp. 14, 16, 17, 19 (citations and internal

quotation marks omitted).

      As to Ground Two, the Appellate Division, quoting the Law Division at length, rejected

the claim as follows:

It is alleged that trial counsel failed to seek DNA testing of a towel
and sweatshirt that were apparently used by the Dudleys[] in order
to cover their faces while committing the armed robbery of a bingo
hall at St. Aedan's Church on September 6, 1999.  Petitioner has
failed to demonstrate how DNA testing (if indeed it is possible at
this time) would help the petitioner.  There was no evidence or
suggestion at the trial that the DNA of the actual perpetrators
would have had any reason to come into contact with these masks .
. . .  While the crime occurred on September 6, 1999, the towel and
sweatshirt may have come into contact with someone's DNA
during the days, months or years of their existence prior to the date
of the robbery.  Whether petitioner's DNA was or was not on the
masks wold be of no help to petitioner.  Only his DNA being on
the mask would be would be of interest but it would help only the
State.  At oral argument PCR counsel suggested that perhaps Mr.
Colon's DNA might have been on the masks, but offered no reason
to suggest this other than speculation.  Colon was an accomplice of
the defendants and drove the car involved in the robbery.
According to the testimony of the victims both perpetrators were
black males.  Anthony Dudley would fit that description.
According to his pre-sentence report Manuel Colon is Hispanic.

11

> There is nothing other than speculation to suggest that DNA testing
> of the towel or sweatshirt would be of any use to petitioner . . .

State v. Dudley, Docket No. A-4033-04T4 slip op., pp. 4-5 (quoting post-conviction relief

judge).

In rejecting Ground Three, the Appellate Division quoted the following passage from the

Law Division:

> Petitioner alleges that trial counsel failed to interview witnesses
> and conducted no investigation.  In the papers submitted petitioner
> was unable to identify what witnesses and what they might say that
> would help petitioner.  At the hearing on January 20, 2005, the
> court requested a proffer from PCR counsel as to who might say
> what that would be of any benefit to petitioner and the response
> revealed that there is simply no proffer even to be made at that
> regard . . . .  In the instant matter petitioner has offered nothing to
> show what anybody would say that would help him.

State v. Dudley, Docket No. A-4033-04T4 slip op., pp. 5-6 (quoting post-conviction relief

judge).

This Court holds that the adjudication of Petitioner's ineffective assistance of counsel

claims by the New Jersey courts was not contrary to, or an unreasonable determination of

Strickland and its progeny.  Petitioner is therefore not entitled to habeas relief on Grounds One,

Two and Three.

B.  Prosecutorial Misconduct

In Ground Four, Petitioner asserts that he was denied due process by (1) the prosecutor's

failure to disclose prior to trial that Manuel Colon (the co-defendant who testified against

Petitioner) had a tacit understanding with the State that Colon would receive a lower sentence if

he testified, and (2) the prosecutor's statement during summation that Colon had nothing to gain

by testifying against Petitioner, since Colon would be tried for his crimes.  Petitioner argues in

12

his Traverse that the New Jersey courts improperly applied <u>Brady v. Maryland</u>, 373 U.S. 83, 87

(1963), when the governing standards are those set forth in <u>United States v. Agurs</u>, 427 U.S. 97

(1976), and <u>Napue v. Illinois</u>, 360 U.S. 24 (1969).

      Petitioner presented the two claims in Ground Four in his petition for post-conviction

relief.  The record shows that the PCR judge initially rejected the claims on the ground that

Petitioner had not established a prima facie case, but decided to order an evidentiary hearing after

reviewing a transcript that was presented in the post-conviction relief application of Petitioner's

brother, Johnny Dudley.  The PCR judge conducted a three-day evidentiary hearing on February

17, 18, 24, 2005, and heard the testimony of nine witnesses:   Robert J. Rudy, the attorney of

Petitioner's brother and co-defendant Johnny Dudley; Kevin Byrnes, appellate counsel for

Johnny Dudley; Aaron Applegate, Petitioner's trial attorney; Allan Smith, Petitioner's counsel on

direct appeal; Dawn Scala, assistant prosecutor on Petitioner's case; John Elefthrow, attorney

who represented Manual Colon in several criminal proceedings, including this indictment; Rick

Ferrara, an agent employed by the Hudson County Prosecutor's Office who was present during

Ms. Scala's interviews with Colon; Barbara Turso-Dembowski, the assistant prosecutor who

prosecuted Colon and negotiated Colon's plea; and Manuel Colon, Petitioner's co-defendant who

testified against Petitioner and Johnny Dudley, but was tried subsequently.  According to the

transcript of the decision denying post-conviction relief, the PCR judge believed the testimony of

Petitioner's trial attorney - Aaron Applegate - that, at the time of Petitioner's trial, he knew that

Manuel Colon had been granted use immunity and, because Applegate had seen Manuel Colon

and Elefthrow meet with Scala a few times prior to Petitioner's trial, Applegate knew that Colon

and his attorney had been talking with the State.  The PCR judge also stated that he believed the

testimony of Elefthrow, Colon's attorney, and Dawn Scala, the prosecutor, that there was no deal

with Manuel Colon at the time Colon testified against Petitioner and Johnny Dudley.  The PCR

judge rejected Petitioner's <u>Brady</u> claim based on the factual finding that there was no deal or

understanding between the State and Colon regarding leniency:

> I think what's important to understand here is that the State did get
> immunity, which was very unusual, as Ms. Scala testified, and they
> were not going to get Mr. Colon's testimony any other way and
> that's why they had to immunize him and then basically compel his
> testimony through the use of immunity.  So I cannot find that the
> defendants have made out a - by a preponderance of the evidence
> that there was some sort of deal or understanding.  So to that
> extent, the petition for post-conviction relief is denied.

<u>State v. Dudley</u>, Ind. No. 00–4-0654 transcript, p. 132, lines 12-22 (N.J. Super., Law Div., March

2, 2005).

The PCR judge rejected the claim that the prosecutor had misled the jury during

summation based on the same factual finding, <u>i.e.</u>, there was no understanding between the State

and Colon regarding leniency:

> As far as prosecutory misconduct Ms. Scala was replying in the
> summation when she said to the jury that Colon would be tried.
> She was replying to suggestions by defense counsel earlier that he
> might walk away scot free or there might be a - that there was a
> plea bargain of some sort.  There was no plea bargain; there was no
> understanding.  When she said he would be tried, she meant that he
> would be prosecuted.  That was a fair comment to make at the time
> and the deal that Manuel Colon eventually got was, I believe, a
> maximum ten-year exposure.  The original deal made and offered
> in January of 2001 was ten years . . . .  It's not as if his original plea
> offer was thirty or forty years or something like that . . . His
> exposure was ten years even if he didn't testify, with the eighty-
> five-percent factor.  The deal afterwards wasn't all that much
> different.  It's not as if it went down from fifty years to ten years, it
> was just the NERA factor being eliminated.

<u>State v. Dudley</u>, Ind. No. 00–4-0654 transcript, pp. 133-34.

On appeal from the order denying post-conviction relief, however, Petitioner changed the factual basis for his two prosecutorial misconduct claims.  Based on Colon's testimony at the post-conviction relief hearing that at the time of Colon's arrest, the police told Colon that he would only serve three years if he cooperated, Petitioner argued that the State's failure to disclose this offer violated <u>Brady</u>, and that the prosecutor misled the jury during summation when she said Colon had nothing to gain by testifying.[3]  The Appellate Division, without expressly stating that Dudley's prosecutorial misconduct claims had been modified, affirmed "substantially for the reasons set forth by Judge Schultz in his letter opinion of January 27, 2005, and his comprehensive oral decision on March 2, 2005, at the conclusion of the evidentiary hearing.  But a few comments are in order."  <u>State v. Dudley</u>, Docket A-4033-04T4 slip op., p. 11 (N.J. Super., App. Div., Jan. 29, 2007).  The Appellate Division went on to reject the <u>Brady</u> claim on the ground that the failure to disclose the offer by the police of three years (Colon eventually entered a plea bargain and was sentenced to nine years) did not violate due process because it is not reasonably probable that the outcome of defendant's trial would have been different if the allegedly withheld information had been disclosed:

> Defendant also contends that the State failed to disclose exculpatory or material evidence "regarding Colon's initial encounter with the police and their offer of a plea bargain in exchange for his cooperation," in violation of <u>Brady v. Maryland</u> . .

---

[3] Petitioner asserted in his appellate brief: "Colon testified at the post conviction relief hearing that the arresting officers offered him a three year sentence if he cooperated.  This information was never revealed to defendant . . . .  Colon claimed at trial that he was cooperating with the State as it was the 'right thing to do.'  However, it became evident in Colon's testimony at the evidentiary hearing that he was initially duped into giving an incriminating statement by the arresting officers, and then cooperated in order to mitigate the consequences of his early admissions.  Had the defense been able to explain this to the jury, Colon's testimony against defendant would have been neutralized."  <u>State v. Dudley</u>, Docket No. A-004033-04T4 defendant-appellant's brief, p. 33; Respondents' Appendix at p. Ra 268.)

. . As previously noted, Manuel Colon was sentenced to an
aggregate nine-year prison term.  But during the PCR hearing,
Colon testified that when he was arrested, the police told him that
he was "not going to do more than three years."  Defendant now
argues that the State's failure to disclose this information - even
though "the arresting officers may not have had the power to make
such an offer" - justifies a new trial . . . .

Although there is no evidence that the prosecutor's office actually
knew, or had constructive knowledge, of the statement allegedly
made by the unidentified police officer who arrested Colon, we
will assume, for the sake of argument, that the statement was
actually made to Colon and that knowledge of the statement should
be imputed to the prosecution . . .

        *        *        *

As we previously discussed, defendant's trial attorney vigorously
attacked Colon's credibility throughout the trial, and he argued
during his summation that Colon had concocted a story to curry
favor with the prosecutor's office.  It is clear, therefore, that if the
allegedly suppressed evidence had been disclosed to defense
counsel prior to trial, it would not have materially strengthened the
assault on Colon's credibility.  Because defense counsel attacked
Colon's credibility so thoroughly throughout the trial, and because
witnesses other than Colon provided ample evidence to convict
defendant, we conclude that it is not reasonably probable that the
outcome of defendant's trial would have been different if the
allegedly withheld information had been disclosed.

State v. Dudley, Docket No. A-4033-04T4 slip op., pp. 19-22.

The Supreme Court has held that the prosecution in a criminal proceeding has a due
process obligation to disclose to the defendant its knowledge of material evidence favorable to
the defendant, either because the evidence is exculpatory or because it can serve to impeach a key
prosecution witness.  See Kyles v. Whitley, 514 U.S. 419, 433 (1995); Giglio v. United States,
405 U.S. 150 (1972); Brady v. Maryland, 373 U.S. 83 (1967).  "There are three components of a
true Brady violation:  The evidence at issue must be favorable to the accused, either because it is

16

exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985).

This Court holds that the New Jersey courts' finding that the prosecutor had not made a secret deal with Colon was not unreasonable determination of the facts in light of the evidence presented at the post-conviction relief evidentiary hearing. "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Under § 2254(e)(1), this Court must presume that the PCR court's factual finding that the prosecutor did not have a secret deal or understanding with Colon is sound. Petitioner has not rebutted this presumption of correctness by clear and convincing evidence, and he has not established that the decision of the PCR judge was based on an unreasonable determination of the facts in light of the evidence presented at the evidentiary hearing. See Matthews v. Ishee, 486 F. 3d 883, 895-96 (6th Cir. 2007) (state court's factual finding, in rejecting prosecutorial misconduct claim, that no preexisting plea deal existed in exchange for prosecution witness's testimony, was not rebutted by clear and convincing evidence in habeas proceedings, so as to warrant grant of habeas relief on basis of a Brady violation for failure to disclose plea deal during

trial); <u>Moore-El v. Luebbers</u>, 446 F. 3d 890, 900 (8th Cir. 2006) (state court's finding that there

was no credible evidence that there was an agreement for leniency between prosecutor and

prosecution witness was entitled to presumption of correctness, and petitioner's <u>Brady</u> claim

based on states's failure to disclose purported agreement did not rebut presumption); <u>Wisehart v.</u>

<u>Davis</u>, 408 F. 3d 321, 323-24 (7th Cir. 2005) (finding by state supreme court that there was no

agreement between prosecution and its key witness to testify against petitioner was binding upon

federal habeas court addressing petitioner's <u>Brady</u> claim, based upon government's alleged failure

to disclose agreement); <u>Shabazz v. Artuz</u>, 336 F.3d 154 (2nd Cir. 2003) (habeas petitioner did

not present evidence sufficient to rebut presumption of correctness afforded state court factual

findings in rejecting <u>Brady</u> claim regarding undisclosed promises of leniency to prosecution

witness).  Thus, habeas relief is not warranted on Ground Four pursuant to § 2254(d)(2).

  This Court further holds that habeas relief on Ground Four is not warranted pursuant to §

2254(d)(1) because the Appellate Division's adjudication of Petitioner's prosecutorial

misconduct claims was not contrary to, or an unreasonable determination of <u>Brady</u>, <u>United States</u>

<u>v. Agurs</u>, 427 U.S. 97 (1976), <u>Napue v. Illinois</u>, 360 U.S. 24 (1969), or other Supreme Court

precedent.  As previously stated, under Supreme Court precedent, suppressed evidence is

material under <u>Brady</u> and its progeny, "only if there is a reasonable probability that, had the

evidence been disclosed to the defense, the result of the proceeding would have been different.  A

'reasonable probability' is a probability sufficient to undermine confidence in the outcome."

<u>Bagley</u>, 473 U.S. at 682; <u>see also</u> <u>Kyles</u>, 514 U.S. at 434 ("The question is not whether the

defendant would more likely than not have received a different verdict with the evidence, but

whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy

of confidence"); <u>California v. Trombetta</u>, 467 U.S. 479, 488-89 (1984) (state's failure to retain

breath samples was not unconstitutional where the chances are extremely low that preserved

samples would have been exculpatory); <u>United States v. Agurs</u>, 427 U.S. 97, 112 (1976) ("It

necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise

exist, constitutional error has been committed").  Contrary to Petitioner's contention, the

standard applied by the Appellate Division was not contrary to, or an unreasonable application of

relevant Supreme Court holdings.  Petitioner is accordingly not entitled to habeas relief on under

§ 2254(d)(1) on Ground Four.  <u>See</u> <u>Fahy v. Horn</u>, 516 F. 3d 169, 200 (3d Cir. 2008) (prosecutor's

argument during summation that sexual abuse can occur in a loving non-blood relationship "was

proper and logical when responding to the defense's argument that Fahy could not have raped

and murdered Nicky Caserta because he loved her").

<u>C.  Certificate of Appealability</u>

The Court denies a certificate of appealability because Petitioner has not made "a

substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  <u>See</u>

<u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003).

<b>IV.  CONCLUSION</b>

Based on the foregoing, the Court dismisses the Petition and denies a certificate of

appealability.

       __s/ Stanley R. Chesler___
       Stanley R. Chesler, U.S.D.J.

Dated:_January 21, 2009